No. 2142

Second Circuit Appeal

## CAROLINE WADDELL v. FROST-JOHNSON LUMBER COMPANY

. (June 6, 1925, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Appeal—Par. 625; Master and Servant—Par. 160 (I).

Under Employers' Liability Act No. 20 of 1914, the opinion of the trial judge on a matter of fact, namely, the cause of death of an injured employee, being manifestly erroneous, is reversed.

Appeal from Eleventh Judicial District Court of Louisiana, Parish of Natchitoches, Hon. J. W. Jones, Jr., Judge.

This is a suit to recover compensation under Act No. 20 of 1914, brought by a widow for the death of her husband under Section 8, Subsection 2 (a) of that act.

C. B. McClung, J. C. Gunter, of Natchitoches, Julius T. Long, of Shreveport, attorneys for plaintiff, appellant.

Thornton, Gist & Ritchie, of Alexandria, attorneys for defendant, appellant.

REYNOLDS, J. This is a suit by Caroline Waddell, widow of Mose Waddell, deceased, to recover compensation for the death of her husband under the workmen's compensation law of Louisiana.

Defendant denies liability on the ground that Mose Waddell suffered from epileptic fits and came to his death from natural causes.

The first question to be decided is whether or not defendant is liable.

Mose Waddell, in his usual state of health, was driving a lumber car drawn by a mule. Without hitching the chain which goes around the lumber and keeps it in place, he got on top of the lumber and drove off. The lumber and Mose fell or slipped to the floor. Mose got up, and from that time until his death was never in normal condition.

Paul Silvia, a witness for defendant, testified, page 13.

"Q. Just a little while before this happened, had you seen anything of Mose Waddell around the shed where he was working?

"A. Yes sir, he was driving for me, I was loading for him, I saw him, he came in where I was loading, and he got a load, and throwed his chain across it

and got on top of it without fastening it, and I was angry with him, and I hollered at him and asked him what the hell was ailing him, and he did not tell me anything at all, and about that time he slipped off, and got up without saying a word and went on down to the kiln, and later after that, the boy Oliver Allen told me the mule had killed him, and we went down to the kiln and they had took him up and they had took him to the doctors, and I came back and went to work and that is all I know."

On pages 15 and 16:

"Q. Did Mose fall?

"A. Yes, sir, the lumber slipped off and did not turn over, and he sit down on the lumber.

"Q. What went with the mule?

"A. He had the lines. When the lumber fell the mule stopped and he got up and went on down to the kiln and did not stop at the shed at all."

Just after Mose fell and while he was on his way from the dry shed to the mill, he was met by John Butler who says, on pages 27 and 28:

"Q. How far were you from Mose Waddell when he stepped off the tram and was found on the ground?

"A. I met Mose Waddell coming down to the kiln.

* * *

"Q. Did he speak to you?

"A. No sir, never said a word.

* * *

"Q. He had his head on one side?

"A. That way, hanging to the left.

Dr. L. N. Hankins, physician for defendant company who treated Mose Waddell after the accident, testifies, pages 30, 31 and 32.

"Q. You treated Mose Waddell prior to this date, and you examined him at the time, and knew his history and the history of the accident, and saw the condition of Mose Waddell? What in your opinion at that time was the cause of his death?

"A. He died from a ruptured blood vessel in his head.

* * *

"Q. There was no external evidence of a fractured skull?

"A. No sir. There was no external evidence of him having a fit, because he was in a deep coma when I saw him; he was in a deep coma, practically dead.

* * *

"Q. He did have a ruptured blood vessel?

"A. Yes, that is what he died from. That could be caused from high blood pressure or a kick.

* * *

"Q. You saw no evidence of his having a fit?

"A. No, sir.

"Q. Explain to the court how a man acts after he has had a fit?

"A. Ordinarily when a man has a fit, for four or five hours after he had it his muscles all quiver and he is all froth at the mouth; this man was not doing that.

"Q. If he had had a fit, it would have been some sign for you to see it?

"A. Yes, ordinarily.

"Q. How long had you done the practice for Mose Waddell?

"A. I been at it five years.

"Q. He never had epileptic fits or spells of any kind?

"A. No, I was never called at his house but once, and that was when he had the dengue fever. I was out there several times when he had the fever."

From the above evidence of defendant's witnesses we are convinced that Mose Waddell fell with, on or in a carload of lumber and that this fall was the proximate cause of his death.

Defendant insists that it should be held not liable for damages, on the theory that Mose Waddell came to his death from an epileptic fit, or natural cause.

There is no evidence that Mose Waddell ever had an epileptic fit. The only witnesses tendered by the defendant supporting the epileptic fit are Oliver Allen and Henderson Starks.

Oliver Allen's testimony was either hearsay as to what was said by a dumb negro, "Dummy Joe" or his opinion or interpretation of the antics of "Dummy Joe". The antics of "Dummy Joe", as described by Allen, were:

"He was going that way, he sort of run along backwards."

The other witness, Henderson Starks, claims to have been right with Mose Waddell talking to him and that he saw him fall in an epileptic fit.

But Henderson Starks' evidence is out of joint with the established facts in the case. It is out of joint with the testimony of Dr. Hankins, attending physician, who testified that there was no evidence of Mose having had a fit. It is out of joint with the testimony of Oliver Allen who found Mose under the tram and gave out the report that Mose had been kicked or killed by his mule. This could not have happened if the testimony of Starks had been true. Starks' testimony is out of joint with the fact that he did not accompany Mose after the accident to the doctor's office. It is out of joint with the fact that he did not render any assistance to Mose.

His explanation, when asked why he did not do so, "I was afraid he might have kicked me", is not, our opinion, reasonable.

For the above reasons the judgment of the lower court must be reversed and under the evidence it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff Caroline Waddell and against defendant Frost-Johnson Lumber Company for a weekly compensation of $3.00 per week for 300 weeks beginning November 18, 1922, with legal interest on each weekly payment from maturity until paid and for the additional sum of $40.00 for burial expenses, with legal interest thereon from judicial demand until paid, and for all costs in both courts.